Good morning, Your Honor. My name is Kasha Flores. I represent Mr. Garcia. Good morning. Good morning. I see that I have ten minutes this morning, so I would like to address my raised in my briefs, although I still would like to point out that I believe the district court erred in the trial level by not adhering to the law of the case doctrine and precluding much of the evidence in the second trial regarding his dressed offense. Turning my attention to the deportation issue, I believe that a due process violation occurred for two reasons. First, I believe that the immigration judge incorrectly advised Mr. Garcia on the standards that he would have to prove in order to prevail on a CAT claim. And additionally, after asked by Mr. Garcia what type of evidence he could present, did not adequately advise Mr. Garcia on the types of evidence that he could submit to the court that the court was required to consider. Was it he provided the opportunity to consult with counsel? He was provided that opportunity. However, he chose to go forward in a pro se status and then ask the court, if I do fill out the application, what kind of evidence should I submit? He talks about newspaper articles that he has in his possession and indicates to the court that it's all over the news. And the court refuses, in fact, to advise him on the fact that that was, in fact, evidence that he could have submitted to the court and the court was required to consider. If I'm not mistaken, the relevant regulations that govern the I.J.'s role in this Correct. It doesn't require him to go as far as you're advocating. Well, even as far as the potential relief. I mean, where would you draw the line for the immigration judges? My – I would draw the line is that when he first was required to tell him the potential relief and Mr. Garcia asked what that standard was, he should have been advised of the correct standard that he would have to show, considering he is proceeding in a pro se fashion. And then secondly, when asked by Mr. Garcia, okay, what evidence should I bring, I think that under the regulations the immigration judge should have at least told him this is the type of evidence that you should bring. Or you're mentioning things that are things that I would be required to consider under the regulations. And I don't think that that happened in this case. And telling him that he should, you know, that he could consult an attorney or giving him information about where to find an attorney doesn't do it? I don't believe so. He was advised that he had a right to an attorney, but Mr. Garcia also had the right to proceed pro se. And I think that once he's proceeding pro se, that there was some level of information that the immigration judge, because Mr. Garcia was requesting the answer, should have at least informed him of what he needed to bring. Can you use the ---- What's your brief case for that? I'm sorry. My case is that I cited in the briefs or the Abbasi case is one case that discussed what types of information the court was required to consider. In fact, in that case, it discusses the U.S. country reports and the fact that it was required to consider the U.S. country reports, even though the applicant in that case didn't bring it forth, that it was readily available. My question was, is there Ninth Circuit or other authority that says what you just faced with a pro se petitioner to explain the types of relief that are available in any kind of detail? Your Honor, I don't have a specific case that says that, but what I do have is cases that say it is a concern when a defendant is representing himself or an applicant is representing himself in a pro se status, that that raises concerns for this court to consider what was explained to him at the immigration proceedings, rather than having an individual who is there with an attorney. Counsel, my concern is somewhat related, although slightly to one side, and that is, what does the record tell us about whether or not your client would, in fact, have taken advantage of the process if he'd been given a better explanation? In other words, where's the prejudice if the immigration judge had been very precise and had said a different paragraph? What evidence is there that he would have taken advantage of it? Your Honor, in the record, he repeatedly asks, well, what would I have to bring? It's in the newspapers. It's in the newspapers all the time. And I can refer the Court to specific references in there, but he does repeatedly ask through the hearing, it's happening all the time. I hear it all the time. A person last week just got killed that I heard about. So, but there's a week given to him to go and think about it and decide if he wants to come back and do it. And what evidence, I mean, how can we say that if he'd been told, well, that's fine, you can bring that, we'll reset a hearing. How do we know that he would have pursued that when he was given the time and didn't pursue it? Yes, Your Honor, I understand that concern. But what I think the problem was in this case, because of, because of actually the misadvisal on what he would have to prove, that that was so, such a high standard that it left him with really wondering what could he bring to prove that. He, going back to what the immigration judge defined as torture or what he would have to prove in order to prevail on a CAT claim, it was so insurmountable because he misadvised Mr. Garcia that it would have to be the government, it has to be the government that would torture you, that I think that left him in a position that what could he bring. And because of that misadvisal, his then refusal to file an application was in denial of his due process rights. Going back to what he was advised, what constituted a sufficient CAT claim, it was so far from what he should have been told as far as acquiescence, what constituted acquiescence, that it raised the standard so high for Mr. Garcia that I, that I think that that's what left him feeling like he could not therefore bring forward an application. The Court mentioned a prejudice in this case. I think that that first, I know that it is an immigration case, but the Reyes-Reyes case discusses the importance and the policy concerns of, of adhering to the correct standards of what constitutes torture, that prejudice does not need to be shown. But even if this Court decides that some prejudice must be shown, I think that the evidence in 2003, which was the year of his deportation, was, there was insurmountable evidence that, that Mr. Garcia would have been able to bring evidence of, of acquiescence from Guatemala. Within the ERs is the 2003 country report from the U.S. Department of State, which the Court would have been obligated to consider. Additionally, his, he, the fact is he's covered head to toe in tattoos, gang-related tattoos, which are addressed in the country reports as being a concern in Guatemala at that time. And furthermore, the prejudice is that, and the government talks about the fact that, well, what was he eligible for? The fact is that it's true. He was eligible for deferral of removal. Now, that is a form of a relief. And what it means, practically speaking, is that Mr. Garcia would not have been deported back to a country where he faced torture. He would have been in custody most likely here in the United States, but he would have been given the opportunity to hopefully find another country that would have accepted him or prevented the removal that he faced as an element in this case here. And so I think that because the Court did not adequately advise him on what constituted torture, which included acquiescence, and the Reyes-Reyes case mentions, which is important, that in the Reyes-Reyes case, this Court still reversed that case and remanded, despite the fact that the immigration judge mentioned in passing acquiescence once. And that's true. That's what happened in this case. But it's also clear that in this case that's clearly not what was being expressed to Mr. Garcia. Just as in Reyes-Reyes, what was being presented and used in that case, although mentioned once, was not acquiescence, but rather it had to be the government. It has to be the government who would torture. Because of that misadvisal and then further not telling Mr. Garcia what he could present, I believe that there was a violation of his due process rights. And the district court in this case erred by not granting that motion. Your Honor, I'd like to reserve the remainder of my time for a little. Robertson, you can. Thank you for your argument. Hear from the government at this time, Ms. Jennings. Jennings. May it please the Court, good morning. Michelle Jennings on behalf of the United States of America. Good morning. If I could move directly to the deportation issue. Mr. Garcia is challenging the validity of the deport, despite the fact that he has failed to exhaust all administrative remedies. Now, in Mr. Garcia's brief, he points out several alleged shortcomings. Torture was not legally defined for Mr. Garcia. Acquiesce was not legally defined for Mr. Garcia. What the brief, what Mr. Garcia's brief does not do is point out to a single statute or regulation which would require the immigration judge to make such legal definitions available to Mr. Garcia. The obligations of the immigration judge are very specifically codified and specifically set forth. Mr. Garcia had the right to be informed of his apparent eligibility for relief, and he had the right to be afforded the opportunity to make application during the hearing. Both of those things occurred, and they occurred ten times over. The immigration judge, on several occasions, at least ten occasions by my count, asked Mr. Garcia, do you want to apply for relief? If you think you'd be hurt, apply for relief. I'll give you the form. You need to fill out the form to apply for relief. He stated it very simply, he stated it very succinctly, and he stated it repeatedly. The judge could not have been any clearer on how Mr. Garcia would and should proceed if he wanted to apply for relief. And Mr. Garcia, as the Court has already pointed out, Mr. Garcia made the decision to appear pro se. Now, having made that decision, despite being advised that there was legal counsel available to advise him at no cost to Mr. Garcia, he would then have the immigration judge not only serve as the arbiter of the deportation proceeding, but also step down from the bench, sit at Mr. Garcia's side, and appear as Mr. Garcia's counsel. And that is simply not an obligation that is recognized by any statute or regulation. To say that Mr. Garcia was not explained, it was not explained to Mr. Garcia what evidence he could present is simply not true. In fact, the immigration judge overstated it and said any evidence you can find. But let's stop Mr. Garcia. You first need to fill out the form. Do you want to apply? Mr. Garcia, ten times over, said no, I don't want to apply. So for that reason, if the question is whether this deportation was fundamentally fair, whether it comported with Mr. Garcia's due process rights, the answer is yes, it did. Mr. Garcia chose not to take advantage of this one form of relief that was open to him, but that was not through any fault or failure of the immigration judge. For that reason, I believe that Mr. Garcia's claim that the deportation proceeding was invalid is simply not true under the Ninth Circuit law. If there are no questions regarding the deportation, I would like to briefly address the duress issue and just simply point out there was, in the reply brief that Mr. Garcia submitted, it seemed to imply that the government was alleging that Mr. Garcia had to make this fourth element, showing of a fourth element, that he turned himself in to the authorities at the first opportunity that he could. And in fact, that's not the government's argument. As pointed out in several cases, first at Contento, Pochon, and then most recently in 2004 in Verduzco, in fact, it's recognized that there's little difference between this third element under duress, that element being that there was no reasonable opportunity to escape the threatened harm, is in fact quite similar to turn yourself in to the authorities at the first available opportunity. As Mr. Garcia acknowledged at the trial, he knew that that opportunity was available for him. He knew that the San Ysidro port of entry was just minutes away when he was standing there in Tijuana. He knew that there were immigration officials that would be at that port of entry, and that was his safe haven, but he chose not to. Instead, he got on a bus, traveled further into Mexico to the hills of Tecate, and attempted to enter illegally. So on that basis alone, clearly Mr. Garcia acknowledged that he did have a reasonable opportunity to escape the threatened harm. Your Honors, if there are no questions, I would submit on my brief. Thank you very much. Roberts. Thank you, counsel. Rebuttal argument? Your Honor, first the Court asked me whether there was a case that discussed the immigration court's responsibility to explain. Jacinto v. INS at 208 Fed 3rd, 725, which is a Ninth Circuit case, 2000, stated, when an alien appears pro se, it is the IJ's duty to fully develop the record. And then another case, Ijiman v. INS, the spelling is A-G-Y-E-M-A-N, 296 Fed 3rd, 871. That case stated, this is because the aliens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law. I think both of those cases address the concerns that this Court is having on what was that immigration judge's duty to advise Mr. Garcia. Well, it's one thing if he had applied for the relief, if he had actually submitted an application and showed up at the hearing without an attorney, then that regulation makes sense. The IJ would have an obligation to ferret out the facts that would support the application. Correct. But when this Court is faced with deciding whether Mr. Garcia knowingly and intelligently waived his rights to appeal or waived his right to apply for that application, I think this is insightful on what the Court stated. Now, the government in this case talks about what was required of the IJ judge. But what was clear is that the immigration judge, according to the Reyes-Reyes case and the Zane case, was not allowed to misadvise Mr. Garcia on what constituted a cat claim and was not allowed to narrow what Congress intended for torture to be. As far as the argument that the government just brought up about the duress case, what was clear in that case is that under Contento-Pachon, which I think is directly on point with Mr. Garcia's case, is that Mr. Garcia presented issues of fact that should have gone to the jury, that the district court in this case impermissibly judged the credibility of that evidence and therefore precluded it from going to the jury in this case, particularly to the third prong of duress, whether Mr. Garcia had a reasonable opportunity to escape. It's as if in Contento-Pachon the Court made Mr. Contento say the duress occurred in Panama.  You can only talk about Panama. And I think that if you view Contento in that way, that's exactly what occurred in this case. Here over your time. Thank you. Thank both counsel for the argument. The case just argued will be decided. We'll proceed to the last case on the calendar.
judges: Hawkins, Graber, Paez